CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 08 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UHURU' SEKOU OBATAIYE-ALLAH, | CASE NO. 7:15CV00250 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, ET AL., | By: Glen E. Conrad |
| Defendants. | Chief United States District Judge |

Plaintiff Uhuru' Sekou Obataiye-Allah, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. He alleges that the defendant officials of the Virginia Department of Corrections ("VDOC") have violated his constitutional rights by refusing to provide dietary accommodation for his lactose intolerance. After review of the parties' submissions, the court concludes that defendants are entitled to summary judgment as a matter of law.

I.

At the time Obataiye-Allah filed this action, he was incarcerated at Red Onion State Prison ("Red Onion").[1] In his complaint, he alleges that he is allergic to dairy products. As a follower of the Nation of Islam religion, he receives the Common Fare Diet that includes dairy food items and foods containing dairy products. Obataiye-Allah complains that when he avoids eating dairy items in the meals provided to him, he "starve[s]." (Compl. 3, ECF No. 1.) He also alleges that if he accidently eats dairy products, he suffers from "hives, burning of the skin, mouth, itchy eyes, lips, mouth, throat, etc. nausea, gas, abdominal pain, cramps, diarr[h]ea,

---

[1] In June 2016, Obataiye-Allah notified the court that he had been transferred to Sussex II State Prison ("Sussex II").

migraines, [and] closing of [his] esophagus." (ECF No. 1-2.) In his § 1983 complaint Obataiye-Allah sues the VDOC director, two statewide VDOC dieticians, and two food service supervisors at Red Onion, claiming that their failure to provide him with substitute food items for the dairy items in his diet constitutes deliberate indifference to a serious medical need and violates his constitutional rights. He seeks monetary damages and an injunction ordering a dairy-free diet.

Obataiye-Allah arrived at Red Onion in late May 2014. According to the undisputed medical records, at that time, he weighed 221 pounds. In June 2014 and again in December 2014, the institutional physician issued a diet order for Obataiye-Allah to receive no dairy products. Under these diet orders, food service provided Obataiye-Allah substitute food items whenever the menu called for dairy products, such as cottage cheese.

On March 20, 2015, the VDOC's chief physician, Doctor Amonette, issued a directive by email to all VDOC health authorities and medical providers concerning dairy allergies. The email stated that dairy allergies are unusual in adults and, accordingly, only inmates who reported symptoms consistent with a true allergy to dairy products should receive a medical diet order for no dairy. The email indicated that inmates who report a history of pain, gas, bloating, and diarrhea, without other symptoms suggestive of a true allergy, are likely lactose intolerant, rather than allergic; such inmates should merely be advised to avoid dairy products and should not be provided any special dietary accommodations.[2] The email instructed medical providers to reevaluate all existing "no dairy" orders to ensure that they were based on evidence of a true allergy to dairy.

In response to Dr. Amonette's email, Red Onion medical staff reevaluated Obataiye-Allah's "no dairy" diet order and found it not to be medically necessary. Specifically, they found

---

[2] According to the VDOC's state dietician, "The VDOC does not currently have an appropriate substitute for dairy products." (ECF No. 33-3, at 2.)

2

that while Obataiye-Allah may be lactose intolerant, he has not been diagnosed as having a dairy allergy. They instructed him to manage his condition by avoiding the foods that bother him. In May 2014, food service at Red Onion discontinued providing Obataiye-Allah with food substitutes for dairy food items on the Common Fare diet.

The Common Fare diet in 2014 and 2015 called for a glass of milk for breakfast everyday and cottage cheese in at least one meal every other day. Sometime in September 2015, the VDOC implemented a new, hot food Common Fare menu, with cottage cheese served only once or twice per week. The Common Fare menu yields a 3,000-caloric value, with 125 grams of protein; that value exceeds the VDOC master menu by 300 calories. According to Obataiye-Allah's medical record, he weighed 230 pounds on May 26, 2015—ten pounds more than he weighed before the "no dairy" order was revoked.

Obataiye-Allah alleges that various past incidents prove that either he actually has a dairy allergy or lactose intolerance causes symptoms serious enough to require dietary accommodations. He alleges that on June 16, 2015, cottage cheese was served next to his beans and although he tried to separate the two and eat only the beans, he developed swollen eyes and a rash on his chest.[3] Obataiye-Allah complained of other allergic reactions from food on June 17 and 24, and on August 3 and 4, 2015.[4] He alleges that his dairy problems have caused him to develop dark circles around his eyes and to lose weight to the point that, at nearly six feet and ten inches tall, he is substantially under his normal weight of 262 pounds.

---

[3] Obataiye-Allah's medical records indicate that the nurse who examined him in response to these complaints noted unlabored breathing and no raised rash, with only a small amount of swelling around both eyes, and administered Benadryl.

[4] When Obataiye-Allah complained of allergy symptoms in June 2015, the nurse noted no acute distress, provided Benedryl, and referred him for chart review by the institutional physician, who noted Obataiye-Allah's past refusal to undergo allergy testing. The medical record does not reflect that Obataiye-Allah raised allergy complaints on August 3 or 4, 2015.

3

II.

For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments" on prisoners, including the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citations omitted). To succeed on any Eighth Amendment claim, a prisoner must show that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . [the] injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008).

To succeed in a § 1983 claim related to medical care in prison, plaintiff must state facts showing that he has a serious medical need to which the defendant prison officials were deliberately indifferent. See Estelle v. Gamble, 429 U.S. 97 (1976). To act with deliberate indifference, an official must have been personally aware of facts indicating a substantial risk of serious harm, and also must have actually recognized the existence of such risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). Prison personnel are entitled to rely on the medical judgment of an inmate's treating physician to determine what treatment is required to address

4

risks of harm related to medical conditions. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir.1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)).

Obataiye-Allah's self-diagnosis of his symptoms as serious enough to warrant special dietary accommodations is insufficient to prove that he has a serious medical need for the special diet he desires. Moreover, although he has access to his medical records, he does not allege or submit any documentation verifying that a medical professional has diagnosed him as being allergic to dairy products.

Even accepting as true Obataiye-Allah's allegations that the symptoms he experiences after eating foods containing dairy cause him substantial discomfort, he has not forecast evidence supporting the elements of an Eighth Amendment claim here. First, the Red Onion medical staff decided Obataiye-Allah had no medical necessity for a dairy-free diet that the VDOC now reserves for inmates with a diagnosed allergy to dairy products. The right to medical care is limited to treatment that is medically necessary and not that "which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977). Second, defendants in this lawsuit—the VDOC director, dieticians, and food service supervisors—are not doctors. They do not have the expertise to diagnose Obataiye-Allah's symptoms as lactose intolerance or a dairy allergy, or to determine whether the former condition medically requires dietary accommodation. On the contrary, these defendants could lawfully rely on the Red Onion medical staff to make professional judgments as to whether Obataiye-Allah's medical history included a diagnosis that he suffers from a dairy allergy or reported symptoms consistent with lactose intolerance. These defendants could also lawfully rely on Dr. Amonette's professional medical judgment that inmates with lactose intolerance have no serious medical need for dietary accommodations. For these reasons, Obataiye-Allah cannot show that these defendants acted with deliberate

indifference when they refused to enforce his prior "no dairy" diet orders, in light of the medical staff's determination of no medical necessity for such a diet under Dr. Amonette's directive.[5] Accordingly, the court will grant defendants' motion for summary judgment.[6] An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: This 8th day of August, 2016.

/s/ [signature]
Chief United States District Judge

---

[5] Obataiye-Allah asserts that summary judgment would be premature until he has been granted certain discovery items he has requested: his entire medical record; lists of ingredients of all foods on the Common Fare diet he received at Red Onion; reliable documentation about symptoms of lactose intolerance and of allergies to foods such as peanuts and soy; documentation about diagnosing an individual with an allergy to dairy; the number and names of VDOC inmates with these two conditions; documentation showing that when he arrived at Sussex II, he weighed only 118 pounds; and documentation showing that a lactose intolerant individual can often tolerate ingesting some dairy products. When Obataiye-Allah served requests for some of this discovery early in the lawsuit, the court sustained the defendants' objections that he could not obtain medical records in discovery, because he could review them without a court order. The court also sustained defendants' objections that other requests similar to these were overbroad or sought to obtain information beyond the knowledge or responsibility of the defendants, who are not medical professionals. Obataiye-Allah's pending, renewed discovery requests are objectionable for the same reasons. Moreover, they do not seek evidence material to any factual issue related to his attempted claims against the defendants. The court will, therefore, deny Obataiye-Allah's motion regarding these outstanding discovery requests, and finds that defendants' motion for summary judgment is ripe for disposition.

[6] One could say that Obataiye-Allah has sued the wrong defendants who have no medical expertise or authority to diagnose and order accommodation of his alleged medical dietary needs. The court cannot find, however, any obligation to allow Obataiye-Allah to amend to add as defendants the individuals who made the medical determinations with which he is dissatisfied. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (directing court to allow pro se litigant to amend an insufficient pleading if it may be amended to achieve justice). At the most, Obataiye-Allah's complaint alleges his disagreement with the medical judgments of the professionals charged with his care. The gist of such a claim is medical negligence, and such allegations do not implicate his constitutional rights. See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir.2008) ("Put simply, negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference.").

6